**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**RICHARD F. JACKSON**                                                                                   **PLAINTIFF**

**VS.**                                              **3:10-CV-00276-BRW**

**JOHN M. SELIG, in his Official Capacity**                                                      **DEFENDANT**
**as Director of Arkansas Department of**
**Human Services**

**ORDER**

Pending are cross-motions for summary judgment (Doc. Nos. 37, 40). Each party has responded and replied accordingly.[1] For reasons set forth below, Defendant's Motion for Summary Judgment (Doc. No. 40) is DENIED, and Plaintiff's Motion for Summary Judgment (Doc. No. 37) is GRANTED.

**I.    BACKGROUND**

On May 22, 2008, eighty-year-old Richard Jackson was admitted to a long-term nursing facility in Wynne, Arkansas, and resided there until his death on December 17, 2011.[2] His wife, Alva Jackson, continued to live in the community. Following his admission to the nursing facility, Mr. Jackson applied to the Arkansas Department of Human Services ("ADHS") for Long Term Care ("LTC") Medicaid benefits. ADHS completed a LTC Spousal Resource Assessment showing that the Jacksons had available resources totaling $499,820.40, with each spouse's share equaling $249,910.20.[3] At the same time, ADHS completed a Resource Eligibility Worksheet showing that, without regard to Alva Jackson's Community Spouse Resource Allowance or Mr.

---

[1]Doc. Nos. 43, 44, 47, and 48.

[2]Doc. Nos. 1 and 36, Ex. A.

[3]Doc. No. 1, Ex. A.

1

Jackson's allowance as the institutionalized spouse, Mr. Jackson had available resources totaling $395,420.40.[4]  ADHS denied Mr. Jackson's LTC Medicaid benefits application because his available resources exceeded the applicable limit.[5]

Mr. Jackson, through his attorney-in-fact (Alva Jackson), then purchased two annuities from OM Financial Life Insurance Company with the resources determined by ADHS to be available to Mr. Jackson.[6]  Mr. Jackson again applied to ADHS for LTC Medicaid benefits.[7]  He listed the two annuities in his application, but listed Alva Jackson as the recipient of their monthly payments.

ADHS completed an Asset Transfer Worksheet and charged Mr. Jackson with transferring $302,796.72 in resources for purchasing the annuities.  Based on this charge, ADHS penalized Mr. Jackson with a with a period of ineligibility.[8]  ADHS then informed Mr. Jackson that his application was denied because: (1) the period of ineligibility imposed for transferring assets for less than their fair market value; or alternatively, (2) the period of ineligibility imposed for the diversion of annuity income.[9]

---

[4]Doc. No. 1, Ex. B.

[5]Doc. No. 1, Ex. C.

[6]Doc. No. 39.

[7]Doc. No. 1, Ex. F.

[8]Doc. No. 1, Ex. G.

[9]Doc. No. 1, Ex. H.

Mr. Jackson requested a hearing with ADHS's Office of Appeals and Hearings to dispute ADHS's determination.[10] A hearing was held before an administrative law judge ("ALJ").[11] Following the hearing, the ALJ issued his decision, stating that ADHS had erred in penalizing Mr. Jackson, but that he still was ineligible for benefits because his resources exceeded the applicable limit. Mr. Jackson filed an appeal of the ALJ's decision in the Circuit Court of Cross County, Arkansas.[12] While the appeal in state circuit court was pending, Mr. Jackson filed this suit against ADHS.

## II.   PROCEDURAL HISTORY

Mr. Jackson's Complaint alleges that ADHS[13] violated 42 U.S.C. §§ 1396(c)(1)(A), 1396p(c)(2)(B)(i), 1396(d)(2)(A)(ii)&(B), 1396p(c)(1)(F)(i) and (ii), 1396p(c)(1)(G), and the policies and regulations pertaining to annuities established by the Secretary of the U.S. Department of Health and Human Services pursuant to 42 U.S.C. § 1396p(d)(6), by determining that he is ineligible to receive Medicaid benefits because of his purchase of annuities.[14] Relief for these alleged violations is under 42 U.S.C. § 1983. Mr. Jackson also contends that ADHS violated the Supremacy Clause of the federal Constitution by determining he was ineligible for Medicaid benefits under Arkansas laws pertaining to annuities under MS Policy Directive 6-09. Mr. Jackson requested a declaratory judgment that ADHS erred in determining that he was

---

[10]Doc. No. 39.

[11]*Id.*

[12]*Id.*

[13]Mr. Jackson named John Selig, in his official capacity as the Director of ADHS, as the sole defendant; thus, the suit is actually against his employer, ADHS. See *Parrish v Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992).

[14]Doc. No. 1.

3

ineligible for Medicaid benefits and that provisions of Arkansas law conflicting with federal law are preempted. He also requested a temporary restraining order, preliminary injunction and permanent injunction ordering ADHS to cease denying Medicaid coverage to Mr. Jackson, and that I order ADHS to issue him Medicaid coverage from the requested date of eligibility. Finally, Mr. Jackson requested attorney's fees under 42 U.S.C. § 1988.

ADHS moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6), arguing that Mr. Jackson failed to state a claim on which relief could be granted.[15] After careful review, I found that the Complaint alleged sufficient facts to state a claim for relief and denied ADHS's Motion.[16]

Mr. Jackson then filed a Motion for a Temporary Restraining Order and Preliminary Injunction.[17] ADHS responded with a Motion to Dismiss the Motion for Preliminary Injunction, arguing that I should abstain from exercising jurisdiction under the *Younger*[18] abstention doctrine.[19] I denied ADHS's Motion, and preliminarily enjoined ADHS from considering the income streams from the annuities in determining Mr. Jackson's Medicaid eligibility, and from denying Medicaid coverage to him until this case has been fully and finally adjudicated on the merits.[20] ADHS requested that the proceedings be stayed in order to appeal my decision. I granted its request and ADHS appealed the portion of my Order pertaining to the preliminary

---

[15]Doc. Nos. 3, 4.

[16]Doc. No. 6.

[17]Doc. No. 9.

[18]See *Younger v. Harris*, 401 U.S. 37 (1971).

[19]Doc. No. 12.

[20]Doc. Nos. 18, 20.

injunction. However, due to Mr. Jackson's death, the Eighth Circuit dismissed the appeal as moot.[21]

The stay was then lifted, and Alva Jackson was substituted as Plaintiff.[22] Both parties have now moved for summary judgment.[23] Accordingly, their claims will be addressed below.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[24] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[25]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should be granted only when the movant has established a right to the judgment beyond controversy.[26] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[27] I must view the facts in the light most

---

[21]Doc. Nos. 21, 28.

[22]Doc. Nos. 31, 32.

[23]Doc. Nos. 37, 40.

[24]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[25]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[26]*Inland Oil & Transp. Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[27]*Id.* at 728.

favorable to the party opposing the motion.[28]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[29]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[30]

## IV.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ADHS claims that it is entitled to summary judgment as a matter of law because the ALJ's factual findings are entitled to preclusive effect in this action, and those findings resolve any disputes on which Plaintiff's claims in this case can prevail.[31]  Plaintiff disagrees, and argues that the ALJ's decision is not entitled to preclusive effect because it is currently pending review in state circuit court.[32]

The preclusive effect given to an unreviewed state administrative decision in a subsequent federal action varies depending on the laws of the state and the claims asserted in the federal action.  In *University of Tennessee v. Elliott*, the Supreme Court held that unreviewed

---

[28]*Id.* at 727-28.

[29]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[30]*Anderson*, 477 U.S. at 248.

[31]Doc. No. 41.

[32]Doc. No. 44.

state administrative findings do not preclude subsequent actions under Title VII; however, the Court also held that civil rights claims may be precluded by the earlier state agency's decision.[33] Specifically addressing a claim in federal court under § 1983, the Court stated "that when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate . . . federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts.'"[34]  I note, however, that the Court's holding only applies to factual findings, not conclusions of law. Accordingly, I am not required to defer to a  state administrative agency's legal conclusions.[35]

Here, Plaintiff's claim is brought under § 1983. Thus, the ALJ's factual findings are entitled to preclusive effect in this federal action if: (1) the ALJ was acting in a judicial capacity in making the factual findings; (2) the issues of fact resolved were properly before the ALJ; (3) the parties had an adequate opportunity to litigate the disputed issues of fact; and (4) the courts in Arkansas would give preclusive effects to the ALJ's factual findings.

Neither party disputes whether the ALJ's capacity was judicial, claims the issues resolved were not properly before the ALJ, nor argues that an adequate opportunity to litigate the factual issues was absent -- thus, the effect given his findings in this action, turns on whether these findings would be given preclusive effect by Arkansas's state courts.

---

[33]*Univ. of Tennessee v. Elliott*, 478 U.S. 788 (1986).

[34]*Id.* at 799.

[35]See *Peery v. Brakke*, 826 F.2d 740 (8th Cir. 1987); *Arkansas Dep't of Human Servs. v. Welborn*, 66 Ark. App. 122, 125 (1999).

It is questionable whether the ALJ's opinion would be given any preclusive effect by courts in Arkansas. It is well settled that only final judgments are entitled to preclusive effect;[36] and, "[u]nder Arkansas law, an unappealed administrative decision is a final judgment."[37] Here, however, I am not confronted with an unappealed administrative decision -- an appeal of the ALJ's decision is still pending review by a state circuit court. Moreover, the ALJ determined that the case should be remanded because of ADHS's error. This determination is clearly inconsistent with ADHS's position and further convinces me that it is not the sort of "final judgment" entitled to preclusive effect. The parties have not cited to an Arkansas case that squarely addresses whether an administrative opinion under appeal in state circuit court is considered final and entitled to preclusive effect. And after a review of the case law, it appears that the ALJ's decision is not entitled to preclusive effect.[38]

Whether the ALJ's factual findings are preclusive in this action, however, is not a determination essential to deciding ADHS's Motion for Summary Judgment. As detailed below, even if I give preclusive effect to the ALJ's factual findings, Plaintiff's claims are not, therefore, simply precluded.

---

[36]See *Jayel Corp. v. Cochran*, 366 Ark. 175 (2006); *Craven v. Fulton Sanitation Serv., Inc.*, 361 Ark. 390 (2005).

[37]*Alexander v. Pathfinder, Inc.*, 91 F.3d 59, 62 (8th Cir. 1996).

[38]See *Arkansas Dept. of Human Servs., Div. of Children & Family Servs., Special Nutrition Program v. Arkansas Child Care Consultants, Inc.*, 318 Ark. 821, 824 (1994) (holding that agency's findings and factual determinations, for purposes of res judicata, become conclusive when no appeal is brought and the time for filing an appeal has run); *Enviroclean, Inc. v. Arkansas Pollution Control & Ecology Comm'n,* 314 Ark. 98, (1993) (holding that an administrative decision is invalid as arbitrary or capricious if it lacks a rational basis or relies on a finding of fact based on an erroneous view of the law); *Hamilton v. Arkansas Pollution Control & Ecology Comm'n,* 333 Ark. 370 (1998) (holding that issue preclusion does not apply with equal force to all administrative proceedings).

On appeal to the ALJ, was whether ADHS properly denied Mr. Jackson's application because he was ineligible due to the penalty ADHS assessed for transferring assets or diverting income.[39] The ALJ determined that ADHS erred in penalizing Mr. Jackson and remanded the case back to ADHS.

Specifically, the ALJ held that the issue of whether Mr. Jackson transferred assets for less than their fair market value need not be addressed because, an applicant must first be eligible to receive benefits before he or she can be penalized -- and Mr. Jackson was never eligible for benefits due to his ownership of the two annuities. The ALJ then concluded that, as the owner of the annuities, Mr. Jackson received monthly payments totaling $8,410.27, which exceeded the applicable monthly income limit for eligibility. The ALJ further determined that Mr. Jackson could not be penalized for diverting income because, he had not assigned his ownership rights in the annuities or their monthly payments, and therefore, he was still the owner.[40]

In reaching his determination, the ALJ listed several "Findings of Fact." Relevant here are the following purported factual findings:

(1) Annuity Contract LSO18681 was signed on February 16, 2009; it is a single premium annuity; the premium paid was $255,000; the contract provides for $6,924.85 monthly payments for a term of 3 years; Mr. Jackson is named as the owner; Alva Jackson is named as the annuitant and primary beneficiary; the State of Arkansas was listed as the first contingent beneficiary up to the amount of medical benefits provided to the institutionalized owner pursuant to 42 U.S.C. § 1396p(c)(1)(F)(I); and payments were to be mailed to Alva Jackson.

(2) Annuity Contract LSO18680 was signed on February 16, 2009; it is a single premium annuity; the premium paid was $53,400; the contract provides for $1,485.42 monthly payments for a term of 3 years; Mr. Jackson is named as the owner and annuitant; Alva Jackson is named as the primary beneficiary; the State of Arkansas was listed as the first contingent beneficiary up to the

---

[39]Doc. No. 12, Ex. A.

[40]*Id.*

9

    amount of medical benefits provided to the institutionalized owner pursuant to 42 U.S.C. § 1396p(c)(1)(F)(I); and payments were to be mailed to Alva Jackson.
(3) Mr. Jackson receives monthly income from the annuities totaling $8,410.27.
(4) Under the terms of the annuity contracts, the method for transferring ownership is by assignment, and only the owner of the annuities can assign, encumber, or pledge the annuity payments. Mr. Jackson is listed as the owner of the annuities, the parties agreed that Mr. Jackson did not assign ownership of the annuity payments, and there is no evidence that the annuity payments were assigned, encumbered or pledged. Thus, Mr. Jackson is the owner of the annuities and their monthly payments.
(5) The annuity contracts provide that the payments be sent by check to the owner or his designee. The contracts do not list Alva Jackson as the owner of the annuities. The payments were sent to Alva Jackson, as Mr. Jackson's designee.
(6) The fact that Alva Jackson is listed as an annuitant or beneficiary does not entitle her to legal ownership of the annuity payments during Mr. Jackson's life. The fact that the annuity payments are mailed to Alva Jackson has no legal significance.
(7) The parties agreed that there had been no assignment, and there was no evidence that Mr. Jackson had assigned ownership of the annuities or their monthly payments.
(8) Mr. Jackson paid taxes on the annuity payments, indicating that he was the owner.[41]

  I note that the "Findings of Fact" listed in the ALJ's decision are not only factual findings, but contain both factual findings and conclusions of law. Thus, not all of these purported factual findings are entitled to preclusive effect. And Plaintiff's dispute here -- whether the annuities render Mr. Jackson ineligible for LTC Medicaid benefits -- lies mainly with the ALJ's conclusions of law, not with his resolution of disputed facts.

  It appears that the parties dispute only the ALJ's determination that: (1) the annuities and their payments were not assigned by Mr. Jackson; and (2) Mr. Jackson paid income tax on the annuity payments. Whether Mr. Jackson paid taxes on the annuities, or assigned them or their monthly payments, does not establish ownership for purposes of Medicaid eligibility. And the

---

[41]*Id.*

10

ALJ's determination that Mr. Jackson is ineligible for Medicaid benefits based on the annuity payments is a conclusion of law -- one that I not only disagree with but am also not bound to accept.[42] Other federal courts facing this issue have reached similar conclusions.[43]

More to the point, the ALJ stated in his decision that "[t]he issue of ownership is clearly established by the language of the annuity contracts."[44] Noticeably absent from the ALJ's discussion is any mention of the Medicaid Single Premium Immediate Annuity Waiver Endorsement attached to each annuity contract, which states as follows:

> IN COMPLIANCE WITH APPLICABLE LAWS AND REGULATIONS GOVERNING MEDICAID ELIGIBILITY, THE ANNUITY APPLIED FOR IS NON-TRANSFERRABLE, NON-ASSIGNABLE, NON-COMMUTABLE, NON-SURRENDERABLE, TOTALLY AND PERMANENTLY IRREVOCABLE, AND HAS NO CASH VALUE.[45]

---

[42] See *Alexander v. Pathfinder, Inc.*, 91 F.3d 59 (8th Cir. 1996) (holding that a state agency's interpretation of federal law, as opposed to its findings of fact, is not entitled to deference); *Peery v. Brakke*, 826 F.2d 740, 746 (8th Cir. 1987) ("*Elliot* directs that a state agency's factfinding is to be given preclusive effect in a subsequent § 1983 action. In this case, the Commission made the factual finding that Peery did not receive a pretermination hearing. . . . [T]he disputed issue is this case is one of law -- whether Peery was constitutionally entitled to a pretermination hearing. Thus, issue preclusion under *Elliot* does not apply in any meaningful sense to the present case.").

[43] See *Hobbs ex rel. Hobbs v. Zenderman*, 542 F. Supp. 2d 1220, 1225 (D.N.M. 2008) (holding that application of collateral-estoppel or issue-preclusion was not required in § 1983 action where ALJ determined that plaintiff was not entitled to Medicaid benefits, decision was appealed to state circuit court, and the appeal was still pending at the time motions for summary judgment were filed in federal action) (citing *Envtl. Def. v. U.S. E.P.A.*, 369 F.3d 193, 203 (2d Cir. 2004) and *Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002)); *DeSario v. Thomas*, 963 F. Supp. 120, 127-28 (D. Conn. 1997); see also *Perley by Perley v. Palmer*, 157 F.R.D. 452, 457 (N.D. Iowa 1994) ("The preclusion of administrative factfindings in a subsequent federal § 1983 action, however, does not translate into a corresponding rule which gives preclusive effect to the legal conclusions of an administrative agency. . . . This Court is persuaded that this issue involves the interpretation of the applicable Medicaid statute and accompanying regulations, and there is clearly a question of law and not one of fact.").

[44] Doc. No. 12, Ex. A.

[45] Doc. No. 1, Ex. D and E.

This waiver, which prohibits assignment or transfer, appears to go to the issue of ownership, and whether Mr. Jackson was eligible for Medicaid benefits. Even giving the ALJ's true findings of fact preclusive effect, the fact that this Waiver was not even acknowledged by the ALJ convinces me that his findings do not resolve all genuine issues of material fact and preclude Plaintiff's claim in this action. "[T]he amount of deference due an administrative agency's interpretation of a statute [depends on] the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."[46] And, as discussed more thoroughly below, the ALJ's decision appears to conflict with federal law.

The ALJ's opinion does not preclude Plaintiff's claims in this case. Accordingly, ADHS's Motion for Summary Judgement is DENIED.

## V.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A.  Introduction

Plaintiff argues that the undisputed facts show that ADHS erred in determining Mr. Jackson was ineligible for LTC Medicaid benefits and in penalizing Mr. Jackson.[47] Plaintiff asks me to declare that the annuities comply with federal law and therefore, cannot be considered by ADHS in determining Mr. Jackson's eligibility. ADHS argues that "the threshold issue" is whether Mr. Jackson was income-eligible at the time of his application, and the undisputed facts establish that he was not.[48]

---

[46]*CBS, Inc. v F.C.C.*, 453 U.S. 367, 406 (1981) (internal quotations omitted).

[47]Doc. No. 38.

[48]Doc. Nos. 43, 47.

**B.    Brief Overview of Medicaid Act**

Medicaid is a cooperative federal-state government program that provides medical assistance to individuals "whose income and resources are insufficient to meet the costs of necessary medical services."[49]  Under the program, state governments are reimbursed by the federal government for a portion of the cost of providing medical assistance to financially needy individuals.[50]  State participation is not mandatory, but if a state chooses to participate, it must comply with all federal laws and regulations.

Federal law requires states to "develop a plan containing reasonable standards . . . for determining eligibility for and the extent of medical assistance within the boundaries set by the Medicaid statute and the Secretary of Health and Human Services."[51]  State governments, or their agencies, then determine an individual's eligibility based on these standards.  In reaching a determination, a state may only consider the income and resources determined by the Secretary of Health and Human Services to be available to the individual.[52]

As enacted, the Medicaid program posed significant eligibility problems for spouses because they generally share income, hold assets jointly, and are financially responsible for one another. To remedy this problem, Congress passed the Medicare Catastrophic Coverage Act of 1988 ("MCCA").  Relevant here are provisions of the MCCA that provide for the allocation of income and resources between spouses where one spouse applies for Medicaid benefits because of the need for long-term institutionalized care and the other continues to reside in the a

---

[49] *See* 42 U.S.C. § 1396 *et seq.*

[50] *Lankford v. Sherman*, 451 F.3d 496, 504 (8th Cir. 2006).

[51] *Wisconsin Dept. of Health & Family Servs. v. Blumer*, 534 U.S. 473, 479 (2002) (quoting *Schweiker v. Gray Panters*, 453 U.S. 34, 36-37 (1981).

[52] *Blumer*, 534 U.S. at 479.

community.[53] The Deficit Reduction Act of 2005 ("DRA") further amended the Medicaid program.[54] Under the DRA, transfers of funds or assets will not affect an individual's eligibility if certain statutory requirements are met.[55] It also exempts certain income and assets from being considered when determining Medicaid eligibility.[56]

### C. Penalty for Transferring Assets

Applicants who transfer assets for less than fair market value are penalized, making them ineligible for Medicaid benefits for a certain period of time.[57] The purchase of an annuity is not a transfer of assets for less than fair market value if the annuity names the state as the " remainder beneficiary in the first position for at least the total amount of medical assistance paid on behalf of the institutionalized individual."[58] Additionally, an annuity is not treated as an asset if: (1) it is irrevocable and nonassignable, actuarially sound, and provides for payments in equal amounts during its term with no deferral or balloon payments; or (2) purchased with proceeds from an account described in subsections (a), (c), or (p) of section 408 of the tax code, a simplified employee pension, or a Roth IRA described in section 408A of the tax code.[59]

As mentioned, Mr. Jackson purchased two annuities: LS018681 and LS018680. Annuity LS018681 names Mr. Jackson as the owner, Alva Jackson as the annuitant and primary

---

[53]42 U.S.C. § 1369r-5.

[54]The Medicaid Act, MCCA amendments, and DRA amendments, will be referred to collectively as "the Medicaid Act."

[55]*See* 42 U.S.C. § 1369p.

[56]*Id.*

[57]*See* 42 U.S.C. § 1369p(c).

[58]*Id.* at § 1369p(c)(1)(F).

[59]*Id.* at § 1369p(c)(1)(G).

beneficiary, and the State of Arkansas as the first contingent beneficiary up to the amount of Medicaid benefits provided to Mr. Jackson under 42 U.S.C. § 1369p(c)(1)(F)(i).[60]  Additionally, the annuity provides for equal monthly payments to Alva Jackson totaling $6,924.85, and states that it is "non-transferrable, non-assignable, non-communtable, non-surrenderable, totally and permanently irrevocable, and has no cash value."[61]  Alva Jackson was 77 at the time the annuity was purchased, and the payments were to be paid out over a term of three years -- thus, the annuity was actuarially sound.

Annuity LS018680 names Mr. Jackson as the owner and annuitant, Alva Jackson as the primary beneficiary, and the State of Arkansas as the first contingent beneficiary up to the amount of Medicaid benefits provided to Mr. Jackson under 42 U.S.C. § 1369p(c)(1)(F)(I). The annuity contract also provides for equal monthly payments to Alva Jackson totaling $1,485.42 for a term of three years, and states that it is "non-transferrable, non-assignable, non-communtable, non-surrenderable, totally and permanently irrevocable, and has no cash value."[62] Mr. Jackson purchased this annuity with proceeds from an IRA account.

I find that both annuities comply with the provisions of the Medicaid Act.  Accordingly, ADHS erred in penalizing Mr. Jackson for his purchase of annuities.

### D.      Annuities and Annuity Payments as Countable Assets

Plaintiff moves for summary judgment on the claim for declaratory relief and urges me to find that the annuities and their monthly payments cannot be considered in determining Mr.

---

[60]Doc. No. 1, Ex. D.

[61]*Id.*

[62]Do. No. 1, Ex. E.

Jackson's eligibility for LTC Medicaid benefits.[63] As noted above, Mr. Jackson could not be penalized for purchasing the annuities because he complied with federal law. Plaintiff asserts that because Mr. Jackson cannot be penalized for the transfer, the annuities and their payments may not be considered by ADHS.

ADHS argues that, under the Medicaid Act, eligibility is determined by considering an applicant's assets at the time the application is filed, and at the time Mr. Jackson applied he was ineligible because of his assets. ADHS argues further that the terms of the annuities establish that Mr. Jackson was the owner of the annuities and the monthly payments, and therefore, he is ineligible for benefits.[64]

When a spouse residing in a long-term care facility ("institutionalized spouse") applies for medicaid benefits and the other spouse continues to reside in the community ("community spouse"), their assets are allocated to determine the institutionalized spouse's eligibility. The Medicaid Act provides that at the beginning of "the first continuous period of institutionalization of the institutionalized spouse," the couple *may* request that the state assess "the total value of the resources to the extent either the institutionalized spouse or the community spouse has an ownership interest," and a "spousal share," equal to half of that amount.[65] "This resource assessment *can, but need not*, occur as part of an application for medical assistance."[66]

The next subsection -- titled "Attribution of resources at time of initial eligibility determination" -- goes on to address resource allocation at the "time of application for

---

[63] Doc. Nos. 37, 38.

[64] Doc. Nos. 40, 41, and 47.

[65] 42 U.S.C. § 1396r-5(c)(1)(A) & (B).

[66] *Morris v. Oklahoma Dep't. of Human Servs.*, 685 F.3d 925, 929 (10th Cir. 2012) (emphasis added) (internal quotations omitted); *see also* 42 U.S.C. § 1396r-5(c)(1)(B).

16

benefits."[67] At this point, "all the resources held by either the institutionalized spouse, community spouse, or both, *shall* be considered to be available to the institutionalized spouse."[68] Here, the date for determining Mr. Jackson's eligibility is March 26, 2009 -- the date he submitted his second application to ADHS for Medicaid benefits.[69]

At that time, Mr. Jackson had already purchased the annuities. As noted above, the annuities complied with § 1369p(c)(1)(G), and therefore, cannot be consider as assets. The term "assets" includes the income and resources of both the individual and the individual's spouse.[70] Accordingly, ADHS cannot consider the annuities in determining Mr. Jackson's eligibility for benefits.

Although annuities themselves may not be considered, the monthly annuity payments may still be considered depending on whether the annuity payments are deemed income or resources. First, it must be determined whether the annuity payments are income or resources, because the two are treated differently in determining Medicaid eligibility.

"Income" (defined by § 1382a) includes both earned and unearned income, and annuity payments are considered unearned income.[71] Accordingly, the annuity payments should be considered as income, not resources. Other circuit courts that have addressed this issue have reached the same conclusion.[72]

---

[67] 42 U.S.C. § 1396r-5(c)(2).

[68] *Id* (emphasis added).

[69] Doc. No. 1.

[70] 42 U.S.C. § 1369p(h)(1).

[71] 42 U.S.C. § 1382a(a)(2)(B).

[72] See *Morris*, 685 F.3d at 934-33 (holding that monthly payments from DRA-compliant annuity should be treated as income to the payee); *Lopes*, 696 F.3d at 184 (holding that income

Under the Medicaid Act, only the income of the institutionalized spouse is considered in determining the institutionalized spouse's eligibility.[73] Here, the annuity payments were payable to Alva Jackson, the primary beneficiary. Accordingly, the annuity payments cannot be considered by ADHS as income or resources available to Mr. Jackson when determining his eligibility.

## CONCLUSION

Based on the above findings of fact and conclusions of law, Defendant's Motion for Summary Judgment (Doc. No. 40) is DENIED, and Plaintiff's Motion for Summary Judgment (Doc. No. 37) is GRANTED. Accordingly, ADHS is permanently enjoined from assessing a penalty against Mr. Jackson for the purchase of the annuities, and from considering the annuities or their payments as income or resources available to Mr. Jackson in determining his eligibility for Medicaid Benefits.

IT IS SO ORDERED this 13th day of March, 2013.

/s/Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

stream from non-assignable annuity is properly considered as income to the payee).

[73] *See* 42 U.S.C. § 1369r-5 (community spouse's income is not considered available to institutionalized spouse); see also *Lopes*, 696 F.3d at 182.